IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTWON LANE | : | |
|    Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-6033 |
| | : | |
| FEA INDUSTRIES, INC. | : | |
|    Defendant. | : | |

## MEMORANDUM

Younge, J.                                                                                                                                              October 21, 2022

### I. INTRODUCTION

Currently before this Court is Defendant FEA Industries, Inc's ("FEA") Motion for Summary Judgment (ECF No. 16). The Court finds this motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendant FEA's Motion for Summary Judgment (ECF No. 16) will be granted.

### II. FACTUAL BACKGROUND

Plaintiff Antwon Lane, an African-American male, has filed a civil action against his former employer, Defendant FEA Industries, Inc., a manufacturing company, for alleged discrimination and retaliation based on race. (First Amended Complaint (hereinafter, "FAC") ¶¶ 1, 9, 12, 32-38, ECF No. 22.) Though hired in February 2020 and then furloughed in late March 2020 due to the ensuing COVID-19 pandemic, Plaintiff would later be reinstated in early April 2020. (FAC, ¶¶ 13, 16-17, ECF No. 22.) Upon his return, Plaintiff alleges that he now had to work daily with Defendant's President and Owner, William Heffner, III (hereinafter, "Heffner")—who had subjected Plaintiff "to discriminatory and disparate treatment because of his race." (FAC, ¶¶ 19-20, ECF No. 22.) More specifically, Plaintiff suggests that Heffner had been "abrasive towards Plaintiff, shook his head at Plaintiff, talked down to him, and had a look of disgust when around

Plaintiff." (FAC, ¶ 21, ECF No. 22.) Another point of contention arose regarding Defendant's cell phone policy—whereby Heffner told Plaintiff that he could not have his phone in the workplace, while Plaintiff notes that he had been told that he could use his cell phone to listen to music while working. (FAC, ¶¶ 23-24, ECF No. 22.)

Bothered by this encounter and the other perceived instances of differential treatment, Plaintiff, the very next day, asked to speak with Heffner and stated to Heffner, "I feel like you are racially discriminatory towards me." (FAC, ¶ 27, ECF No. 22.) After Heffner allegedly yelled at Plaintiff and informed him that he was not racist, Plaintiff had been instructed to go to the break room and to wait for HR. (FAC, ¶¶ 28-29, ECF No. 22.) Shortly thereafter, Defendant's Human Resources Manager, Susan Younge, arrived in the break room and, after Plaintiff had expressed his concerns to her, Plaintiff notes that he had been informed that he was being terminated. (FAC, ¶ 30, ECF No. 22.) Believing that he was terminated because of his race and/or for raising concerns around racial discrimination, Plaintiff is suing Defendant for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), and the Pennsylvania Human Relations Act ("PHRA"). (FAC, ¶¶ 31-38, ECF No. 22.) In response, Defendant has filed a motion for summary judgment—wherein Defendant notes that Plaintiff's termination had been the result of excessive tardiness, violations of Defendant's cell phone policy, and insubordination—all of which had occurred during Plaintiff's probationary period—and had nothing to do with Plaintiff's race. (Def. Mem. of Law in Support of Mot. for Summ. J., pp. 2-6, ECF No. 16.)

**III.   LEGAL STANDARD**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

As an initial matter, it is worth noting that Plaintiff's claims across Title VII, Section 1981, and the PHRA can be consolidated for purposes of this analysis. *See Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa. 1996) ("[Plaintiff's] Title VII, PHRA, and § 1981 claims all fall under the same analytical framework, and will therefore be examined together.")  Thus, this Court will review Plaintiff's consolidated disparate treatment and retaliation claims in turn.

### a. Disparate Treatment

As the Third Circuit instructs, "[a] disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990).  Under a disparate treatment theory, "proof of the employer's discriminatory motive is critical." *Id.*  Further, there are two ways to show discriminatory intent: either through (1) direct evidence; or (2) indirect and circumstantial evidence. *Id.*  In this case, Plaintiff has not offered direct evidence of discrimination that "*is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case* [as is necessary in a pretext action] to shift the burden of production." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995) (emphasis in original) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994)).  Instead, Plaintiff seemingly proffers indirect and circumstantial evidence to establish and infer Defendant's discriminatory motive and intent.  Thus, this Court's analysis will focus primarily on Plaintiff's indirect and circumstantial evidence theory.

Under the pretext (also referred to as the indirect or circumstantial evidence) theory, the Third Circuit instructs that the U.S. Supreme Court's *McDonnell Douglas* burden-shifting framework applies. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (referencing *McDonnell

*Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). The *McDonnell Douglas* burden-shifting framework has three potential steps. First, "the plaintiff must…establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Id.* Second, if the plaintiff makes such a showing of a *prima facie* case, "then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* Third and finally, if the defendant provides a legitimate, non-discriminatory reason, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.* The U.S. Supreme Court reiterated that "[t]he prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Further, "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 512 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Turning to the first step of the *McDonnell Douglas* burden-shifting framework, Plaintiff and Defendant agree that the first three prongs of a *prima facie* Title VII discrimination case are satisfied and, instead, spend the bulk of their time and energy arguing over the fourth prong—*i.e.,* whether Plaintiff's termination gives rise to an inference of discrimination. (Def. Mem. of Law in Support of Mot. for Summ. J., p. 13, ECF No. 31.) Under a Title VII termination claim, Plaintiff can establish an inference of discrimination by "demonstrat[ing] that similarly-situated persons outside the protected class were treated more favorably." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa.), *aff'd,* 708 F. App'x 48 (3d Cir. 2017). To be "similarly

situated," relevant factors include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). However, the Third Circuit also instructs that, "[s]uch an inference [of intentional discrimination] could be supported in a number of ways, including, but not limited to, [1] comparator evidence, [2] evidence of similar racial discrimination of other employees, or [3] direct evidence of discrimination from statements or actions by…supervisors suggesting racial animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010).

In this case, Plaintiff seemingly attempts to invoke the first and third potential avenues offered by the Third Circuit to infer discrimination—*i.e.,* offering comparator evidence and proffering direct evidence of discrimination from statements or actions by supervisors that suggest racial animus. With respect to comparator evidence, Plaintiff—as a probationary employee—has not sufficiently identified a similarly situated, non-Black employee who was also on probation at the time, who had issues with tardiness, who had past allegations of insubordination, and who had been treated more favorably (*i.e.*, had not been terminated). Such a determination is consistent with the Third Circuit's analysis in another Title VII disparate treatment action:

> As to his claim that he was terminated based on his race, we agree with the District Court that [the plaintiff] did not identify any similarly situated employee outside his protected class who failed to follow instruction, failed to work amicably with co-workers, and disrupted the workplace, but who was not terminated. [The plaintiff] does argue generally that two of his white co-workers failed to follow instruction, failed to work amicably with co-workers, and were "a huge disruption in the workplace," but were not terminated. But the co-workers he named were long-term employees, not probationary employees like [the plaintiff].

*Smith v. Sec'y United States Navy*, 843 F. App'x 466, 470 (3d Cir. 2021) (citations omitted); *see also In re Trib. Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (requiring that employees be "similarly-situated in all respects," including their "tenure and status").

With respect to direct evidence of discrimination from statements or actions by supervisors that suggest racial animus, Plaintiff highlights the following examples:

> (1) he was treated rudely, disrespectfully and offensively by Heffner, unlike his non-black colleagues; (2) he was terminated within minutes of expressing his concerns of race discrimination; (3) he was treated completely disparately regarding discipline compared to non-black employees; (4) Defendant's alleged reason(s) for termination are contradictory, inconsistent and simply not believable; (5) Defendant's explanation regarding the termination decision-makers is blatantly contradictory; (6) Defendant's explanation regarding the alleged date the decision was made is also inconsistent; (7) Defendant's sworn testimony that Mr. Lane "pulled the race card"; and (8) Mr. Lane was replaced with a white female.

(Pl. Brief in Opp. to Def. Mot. for Summ. J., p. 29, ECF No. 19-1.) At a high level, Example (2)—being terminated within minutes of making a claim of discrimination—seems best suited for Plaintiff's retaliation claim (*i.e.,* not Plaintiff's discrimination claim). Example (3) seemingly invokes comparator evidence, which, as described above, has not been sufficiently established by Plaintiff. Examples (4), (5), (6), and (7)—allegations of contradictory or inconsistent explanations around Plaintiff's termination—all seem better suited for a pretext analysis, which is analyzed as part of the third step of the *McDonnell Douglas* burden-shifting framework, and not the first step. Additionally, Example (8)—being replaced by a white female—seems more relevant to a Title VII failure to promote claim, which has not been alleged here. Thus, only Example (1)—Heffner treating Plaintiff rudely, disrespectfully, and offensively, unlike his non-Black colleagues—seems relevant to this analysis as direct evidence that suggests a racial animus. However, as the Third Circuit instructs, "[i]n the context of discrimination claims, we have explained that conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment." *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 839 (3d Cir. 2004). Thus, from

7

the relevant Example (1) proffered by Plaintiff, this Court cannot infer that a discriminatory motive had tainted or adversely impacted Defendant's decision to ultimately terminate Plaintiff.

Even if Plaintiff had made out a *prima facie* case, Defendant has offered legitimate, non-discriminatory reasons for terminating his employment. As the Eastern District notes, "[t]he defendant satisfies its burden of production, and rebuts the plaintiff's *prima facie* showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d at 590 (quoting *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 461 (E.D. Pa. 2013)). Defendant asserts that Plaintiff had been terminated for the following reasons:

> First, Plaintiff was a probationary employee, not subject to progressive discipline. Next, Plaintiff repeatedly and inexcusably violated the Attendance and Absenteeism Policy. Remarkably, in the brief approximately two (2) months Plaintiff worked for FEA Industries, a period punctuated by twelve (12) days of furlough, Plaintiff was late to work twenty-five (25) times – or nearly half of his tenure at FEA Industries. Further, when Chrystal Colflesh, FEA Industries' General Manager attempted to alert Plaintiff to his habitual lateness, Plaintiff was late yet again on the next day he was scheduled to work. In addition, Plaintiff was seen by three (3) employees and FEA Industries' owner at least twenty-three (23) times violating the Cell Phone Use Policy. Finally, when Mr. Heffner, FEA Industries owner corrected Plaintiff's violation of the Cell Phone Use Policy, Plaintiff inarguably failed to respond in an appropriate manner. Instead, the day after he was corrected by Mr. Heffner, Plaintiff confronted Mr. Heffner, raising his voice and acting in an insubordinate manner – to the owner of the company for which he worked.

(Def. Mem. of Law in Support of Mot. for Summ. J., p. 19, ECF No. 16.) Given these legitimate, non-discriminatory reasons proffered by Defendant, the burden shifts back to Plaintiff to show that these reasons are merely a pretext for intentional discrimination.

Turning to the third and final step of the *McDonnell Douglas* burden-shifting framework, the Third Circuit describes how Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate

8

reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To establish pretext under the first *Fuentes* prong, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (citations omitted). To establish pretext under the second *Fuentes* prong, the plaintiff could show, for example, "[1] that the employer in the past had subjected him to unlawful discriminatory treatment, [2] that the employer treated other, similarly situated persons not of his protected class more favorably, or [3] that the employer has discriminated against other members of his protected class or other protected categories of person." *Id.* While the Third Circuit recognizes that "this standard places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" *Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

In this case, Plaintiff has not proffered sufficient evidence of pretextual discrimination. With respect to the first prong of *Fuentes*, Defendant's non-discriminatory reasons for not terminating Plaintiff—*i.e.,* being a probationary employee that had excessive tardiness, had allegedly violated the cell phone policy, and had been insubordinate to the owner—have been both consistent and plausible. Though Plaintiff takes issue with the fact that different decision-makers cited different reasons for Plaintiff's termination, those differences stemmed from Heffner citing insubordination, HR citing the cell phone policy, and Defendant's sworn interrogatories citing lateness, the cell phone policy, and insubordination. (Pl. Brief in Opp. to Def. Mot. for Summ. J.,

9

p. 18, ECF No. 19-1.) In other words, the fact that management did not cite to every possible violation when probed is not dispositive; it is enough that they consistently referenced the range of violations that occurred during Plaintiff's tenure with the company. As the Eastern District has reiterated on several different occasions: "so long as Defendant's investigation and determination was based on a reasonable good faith belief, the Court may not act as a super-personnel department over an employer's business judgment." *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 517 (E.D. Pa.), *aff'd,* 401 F. App'x 697 (3d Cir. 2010) (quoting *Jackson v. Bob Evans - Columbus*, No. 2:04CV559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006)). As the United States District Court for the Western District of Pennsylvania noted, even "[a] mistaken but good faith disciplinary decision does not give rise to an inference of discrimination without some showing that the decision was based on Plaintiff's race." *Jackson v. Bob Evans - Columbus*, No. 2:04CV559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006). In sum, Plaintiff has not shown, under this first *Fuentes* prong, that Defendant's proffered reasons are "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Relatedly, under the second *Fuentes* prong, Plaintiff has failed to proffer sufficient evidence that he had previously been subjected to unlawful discriminatory treatment by Defendant, and Plaintiff also has not shown that other, ***similarly-situated*** non-Black employees were treated more favorably or that Defendant had discriminated against other Black employees or other members of a protected class.

Taken together, Plaintiff's claim is dismissed—as a reasonable jury could not infer that Defendant is liable for discrimination and disparate treatment under Title VII, Section 1981, and the PHRA.

### b. **Retaliation**

This Court next reviews Plaintiff's retaliation claim. Similar to Title VII discrimination claims, the *McDonnell Douglas* burden-shifting framework also applies to Title VII retaliation claims. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006), *as amended* (Sept. 13, 2006). First, Plaintiff must establish a *prima facie* case by showing that: "(1) [the plaintiff] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [the plaintiff]; and (3) there was a causal connection between [the plaintiff's] participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340–41. Once the plaintiff makes out a *prima facie* case, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (referencing *Moore*, 461 F.3d at 342). If the employer provides a legitimate, non-retaliatory reason, then "the burden shifts back to the plaintiff 'to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action.'" *Id.* (quoting *Moore*, 461 F.3d at 342). However, the standard for causation differs across step one (the *prima facie* stage) and step three (the pretext stage). "[A]t the prima facie stage the plaintiff must produce evidence 'sufficient to raise the inference that [the plaintiff's] protected activity was the *likely reason* for the adverse [employment] action.'" *Id.* at 259 (emphasis in original) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 179 (3d Cir. 1997)). At the pretext stage, Plaintiff must show "that retaliatory animus was the 'real reason' for the adverse employment action" and "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 258 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)).

Turning to the first step of the *McDonnell Douglas* burden-shifting framework, Plaintiff and Defendant seemingly agree that the first two prongs of a *prima facie* Title VII retaliation

11

case—engaging in protected activity and the occurrence of an adverse employment action—are satisfied. (Def. Mem. of Law in Support of Mot. for Summ. J., p. 23, ECF No. 16.)  After all, on April 24, 2020, Plaintiff stated to Heffner, "I feel like you are racially discriminatory towards me," (FAC, ¶ 27, ECF No. 22.), and protected activity or conduct can constitute "informal protests of discriminatory employment practices, including making complaints to management." *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (referencing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).  Relatedly, an adverse employment action occurred when Defendant terminated Plaintiff.  Instead, the parties disagree over whether the third and final prong has been established.

Under the third prong, the "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).  Though, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Id.* (quoting *Shellenberger,* 318 F.3d at 189 n.9).  With Plaintiff's termination occurring directly after Plaintiff had made his informal complaint to management, the timing could be considered unusually suggestive.  However, Defendant's General Manager, Chrystal Colflesh, noted that she had made the decision to terminate Defendant two weeks' prior to this incident. (Def. Mem. of Law in Support of Mot. for Summ. J., p. 24, ECF No. 16.)  Further, Defendant invokes *Dill v. Runyon*— whereby the Eastern District determined that no causal connection existed where the decision-maker noted that she had not been aware that the plaintiff had engaged in any prior protective activity when she made the decision not to reinstate the plaintiff. No. CIV. A. 96-3584, 1997 WL 164275, at *6 (E.D. Pa. Apr. 3, 1997).  Thus, *Runyon* suggests that Plaintiff is likely unable to

show that a causal connection exists, nor that Plaintiff's accusation that Heffner had been treating him differently was the *likely reason* for Plaintiff's termination.

However, even if Plaintiff can make out a *prima facie* Title VII retaliation case, Plaintiff still has not proffered evidence to suggest that Defendant's non-retaliatory reasons for terminating him are mere pretext. In analyzing the second and third step of the *McDonnell Douglas* burden-shifting framework, it closely resembles this Court's analysis of Plaintiff's Title VII discrimination claim, *supra* Section (a). As a refresher, Defendant's reasons for terminating Plaintiff include excessive lateness (*i.e.,* Plaintiff arrived late to work for nearly half of his tenure with Defendant and during his probationary period), alleged violations of Defendant's cell phone policy, and alleged insubordination when Plaintiff confronted and responded to Heffner after Heffner had informed Plaintiff of his violations of Defendant's cell phone policy. (Def. Mem. of Law in Support of Mot. for Summ. J., p. 19, ECF No. 16.) Given these legitimate, non-retaliatory reasons, the burden shifts back to Plaintiff to show that these reasons are merely a pretext for retaliation. As described above, the causation standard—at the pretext stage—is a showing "that retaliatory animus was the 'real reason' for the adverse employment action" and "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Carvalho-Grevious*, 851 F.3d at 258 (quoting *Nassar*, 570 U.S. at 346–47). Here, Plaintiff has not satisfied this but-for causation standard by demonstrating that the "real reason" for his termination had been his informal complaint to Heffner about differential treatment. Quite the contrary, Plaintiff's excessive tardiness, alleged violations of the cell phone policy, and alleged insubordination when corrected about the cell phone policy all serve as intervening circumstances that help to shed light on the real reasons for Plaintiff's termination. Further, as previously noted, this Court will not "act as a super-personnel department over an employer's business judgment." *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 517 (E.D. Pa.), *aff'd,* 401 F. App'x 697 (3d Cir.

13

2010) (quoting *Jackson v. Bob Evans - Columbus*, No. 2:04CV559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006)).

Taken together, Plaintiff's claim is dismissed—as a reasonable jury could not infer that Defendant is liable for retaliation under Title VII, Section 1981, and the PHRA.

## V.   CONCLUSION

For the foregoing reasons, Defendant FEA's motion for summary judgment is hereby granted.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                              **BY THE COURT:**

                                              */s/ John Milton Younge*
                                              **JUDGE JOHN MILTON YOUNGE**